IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


DAVID L. WILLIAMS,          *

                          *

    Plaintiff,         *   CIVIL ACTION NO. 14-00351-B

                          *

vs.                     *

                          *

CAROLYN W. COLVIN,        *

Commissioner of Social     *

Security,              *

                          *

    Defendant.        *

## ORDER

Plaintiff David L. Williams (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*  On June 2, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**

for further proceedings not inconsistent with this decision.[1]

## I.   **Procedural History**

Plaintiff protectively filed an application for supplemental security income on April 5, 2011. (Tr. 130). Plaintiff alleged that he has been disabled since June 15, 1995 due to "learning disability with other mental problems." (Id. at 130, 134).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Marni McCaghren (hereinafter "ALJ") on August 30, 2012. (Id. at 33). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 36). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 50). On November 28, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 29). The Appeals Council denied Plaintiff's request for review on May 30, 2014. (Id. at 1). Thus, the ALJ's decision dated November 28, 2012, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff

---

[1] Any appeal taken from this decision shall be made to the Eleventh Circuit Court of Appeals. (See Doc. 19)("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").

timely filed the present civil action.  (Doc. 1).  Oral argument was conducted on June 2, 2015, and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  <u>Issue on Appeal</u>

A.   **Whether the ALJ erred in failing to find that Plaintiff met Listing 12.05C?**

B.   **Whether the ALJ erred in assigning more weight to the opinions of Dr. Joanna Koulianos, Ph.D., a State Agency reviewing psychologist, than the opinions of consultative, examining psychologist, Dr. Kenneth R. Starkey, Psy.D.?**

## III.  <u>Factual Background</u>

Plaintiff was born on May 14, 1992, and was twenty years of age at the time of his administrative hearing on August 30, 2012. (Tr. 36).  The record reflects that Plaintiff received social security disability benefits as a child based on attention deficit hyperactivity disorder ("ADHD") and that his benefits were discontinued in October 2010.  (<u>Id.</u> at 38, 240).  As noted, *supra*, in his instant application, Plaintiff seeks benefits based on "learning disability and other mental problems."  (<u>Id</u>. at 130, 134).

Plaintiff was enrolled in special education classes while

in school, and he repeated the first and ninth grades.[2] Plaintiff reported that he completed the eleventh grade in high school, that his last report card had all "E's" and that he has not obtained a GED.[3] (Id. at 37, 240). Plaintiff testified that he has trouble with math and reading, but he is able to read a grocery list, and he can make change if it is not a large sum of money. (Id.).

Plaintiff also testified that he lives with his uncle and accompanies his uncle to the grocery store and lifts things for him. (Id. at 36, 46). According to Plaintiff, he lived with his mother prior to her death and during that time, he cleaned the house for her and reminded her to take her medication. (Id. at 46, 48-49). Plaintiff testified that he can prepare simple meals for himself, but he has never lived alone, had a bank account, learned to drive, or taken public transportation.[4] (Id. at 44, 46-47, 50). Plaintiff stated that he enjoys fishing, going to the gym, playing basketball, playing basketball and football video games on the Play Station, watching football and

---

[2] The record reflects that Plaintiff was dropped from the special education program after middle school due to failure to sign appropriate paperwork and failure to attend meetings. (Tr. 240).

[3] Plaintiff testified that he left school in the eleventh grade because he kept "getting in trouble" and that he plans to obtain his GED, although he is not enrolled in any classes. (Tr. at 37-38). He has not had any other schooling. (Id. at 38).

[4] Plaintiff testified that he never learned to drive because he does not have a vehicle. (Tr. 46-47).

basketball on television, and visiting with friends daily. (Id. at 42, 45, 263, 299). According to Plaintiff, he understands the steps necessary to play the video games, and the scoring utilized in basketball and football, but he does not understand the rules with respect to penalties. (Id. at 42-43).

Plaintiff testified that he has never worked because his back aches and his wrist hurts,[5] and he is learning disabled. (Id. at 38-40). He also testified that he has never received vocational rehabilitation because he does not have transportation to get there. (Id. at 47).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

---

[5] Plaintiff's attorney acknowledged that there was no evidence in the record of any medically determinable impairment related to Plaintiff's back or wrist. (Tr. 39-40). Plaintiff testified that he has seen doctors in the past, but he stopped going to doctors because his Medicaid was discontinued in 2010 and because he did not have a ride. (Id. at 43-44). He testified that he is not on any medication for any condition. (Id. at 48). In his Disability Report dated July 22, 2011, Plaintiff listed no current medications and stated that he does not intend to see a doctor in the future for any physical or mental problem. (Id. at 150).

legal standards were applied.[6]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

B.   **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any

---

[6] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[7] 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff

---

[7] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

has not engaged in substantial gainful activity since April 5, 2011, the application date, and that he has the severe impairments of adjustment disorder with mixed emotion, oppositional defiant disorder, disruptive behavior disorder, conduct disorder, attention deficit hyperactivity disorder, personality disorder, learning disorder (borderline intellectual functioning), and eustachian tube dysfunction. (Tr. 22). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 23).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of medium work, except that "due to a history of dizziness, he should not climb ladders, ropes and scaffolds, work at unprotected heights, operate machinery, or drive automotive equipment. Due to learning difficulties, he is limited to simple, routine tasks, one-two step instructions, occasional and casual contact with the public, and only occasional changes in the work setting. He should not be required to read unfamiliar texts as a job requirement, but could complete familiar checklists. Due to some issues with learning disabilities, he should not have to handle money. Because of some anger personality issues, he should not be involved in the care of

others such as patients, the elderly, and pets. Due to pain and psychological factors, he could be expected to have some deficit in concentration, persistence or pace, which would cause him to be off task for a nonproductive pace for up to 5% of the workday. The claimant could be around coworkers, but should not have to coordinate with them to complete tasks." (Id. at 25). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Id. at 26).

Utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of medium work, as well as his age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as "stacker," "scullion," and "crab butcher," all of which are classified as medium and unskilled. (Id. at 28). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

In determining whether Plaintiff's impairments were severe, the ALJ made the following relevant findings:

> The medical record establishes a history of psychological impairments manifested by an adjustment disorder with mixed emotion,

9

> oppositional deficient (sic) disorder, disruptive behavior disorder, conduct disorder, attention deficit hyperactivity disorder, personality disorder, and learning disorder. (Exhibits 1F, 2F, 3F, 5F, 6F, 8F, & 13F) Reported symptoms included inattentiveness, difficulty following instructions, hyperactivity, trouble concentrating, inability to sit still, inappropriate and aggressive behavior, trouble getting along with others, poor sleep, defiance of authority figures, and poor academic performance. (Exhibits 1F, 2F, 3F, 5F, 8F & 13F)
>
> Evaluations also suggest mild mental retardation. As determined by most recent testing results in a consultative report dated June 2, 2011, the claimant achieved a Full Scale IQ score 66, a Verbal Comprehension Index of 72, Perceptual Reasoning Index of 71, Working Memory Index of 71, and Processing Speed Index of 71. (Exhibit 8F) Taken jointly, these scores place Mr. Williams at the 1st, 3rd, 3rd, 3rd and 3rd percentiles respectively, and in the Extremely Low (Mild Mental Retardation) range of functioning. (Exhibit 8F, p. 5) The claimant suffers from eustachian tube dysfunction, where he had been hit the past on the left side of head by brass knuckles. (Exhibit 6F) Although he suffers from no hearing deficits, he noted dizziness attributable to this remote injury.

(Tr. 22).

In determining that Plaintiff did not meet any Listing, the ALJ also made the following relevant findings:

> The record reflects no gross and/or marked physical deficits. In fact, at the time when the claimant presented to the emergency room on July 11, 2010 with complaints of atypical chest pain with no cardiac cause, he had normal range of motion of the

10

extremities, no lower extremity edema, and no motor deficits. (Exhibit 4F)

Additionally, in a consultative report dated June 2, 2011 and with the exception of problems with anger, aggressive behavior and lifelong history of learning problems, "He denied having symptoms of any other medical or psychiatric condition that might interfere with his ability to work." (Exhibit 8F, p. 3)

Mental health treating reports denote response to medication and therapy as well such that on January 9, 2010, "pt is doing wonderful at home and school; got good behavior award." (Exhibits IF, p. 1)

On examination [at Alta Pointe Health Center] as of May 24, 2010, the claimant presented a silly affect, poor sleep and reports of past suicidal ideation. (Exhibit 2F & 13F) However, he also demonstrated appropriate grooming, normal and cooperative behavior, normal mood, no impairment of speech, no current suicidal or homicidal ideation, normal perceptions, unimpaired memory, logical, coherent and normal thoughts, no impairment of concentration, good insight, fair judgment, and no anxiety. (Exhibits 2F & 13F)

Thereafter, the claimant failed to attend a scheduled appointment on June 7, 2010, and correspondence was forwarded to his guardian (grandmother) advising them of the need to attend therapy sessions no less than once a month. (Exhibits 2F & 13F) Subsequently reports show that he rescheduled his session that was to take place on June 29, 2010, rescheduled his session that was to take place on July 13, 2010, failed to show up at his session on July 28, 2010, and failed to show up at his session on September 1, 2010. (Exhibit 13F) Thus, on December 1, 2010, the claimant was discharged from care considering "Consumer only attended an

11

> intake session at this facility and failed
> to present for additional assessment
> appointments." (Exhibit 13F, p. 8)
>
> Therefore, the severity of the claimant's
> mental impairments, considered singly and in
> combination, do not meet or medically equal
> the criteria of listings 12.02, 12.04 and
> 12.06 (emphasis added) ...

(Id. at 22-23).

In assessing Plaintiff's RFC, the ALJ made the following
relevant findings with respect to Plaintiff's impairments:

> **4. After careful consideration of the entire
> record and giving the claimant the benefit
> of considerable doubt, the undersigned finds
> that the claimant has the residual
> functional capacity to perform medium work
> as defined in 20 CFR 416.967(c) except that
> due to a history of dizziness, he should not
> climb ladders, ropes and scaffolds, work at
> unprotected heights, operate machinery, or
> drive automotive equipment. Due to learning
> difficulties, he is limited to simple,
> routine tasks, one-two step instructions,
> occasional and casual contact with the
> public, and only occasional changes in the
> work setting. He should not be required to
> read unfamiliar texts as a job requirement,
> but could complete familiar checklists. Due
> to some issues with learning disabilities,
> he should not have to handle money. Because
> of some anger personality issues, he should
> not be involved with the care of others such
> as patients, the elderly and pets. Due to
> pain and psychological factors, he could be
> expected to have some deficit in
> concentration, persistence or pace, which
> would cause him to be off task for a
> nonproductive pace for up to 5% of the
> workday. The claimant could be around
> coworkers, but should not have to coordinate
> with them to complete tasks.**

. . .

At the hearing, the claimant testified he is 20 years old and he stopped attending school in 11th grade because he kept getting into the trouble. He reportedly is going to enroll in classes to get his GED. He noted having learning difficulties causing trouble with reading and math. He also has [a] problem counting change involving "big money." He admitted to not following recommended treatment because he had no transportation to get his prescriptions and attend therapy. He also acknowledged he did not try to take the bus and stated that people at the mental health facility did not tell him they had any kind of transportation. He also has never tried to learn how to drive or obtain a driver's license, as well as never had vocational rehabilitation because of lack of transportation. He reportedly spends most of his time in his room, but does get together with friends and plays video games with them pretty much every day and for a couple of hours and helps his uncle at the grocery store.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

While the claimant certainly has significant psychological impairments and difficulties, compliance with recommended treatment has been less than optimal. Not only did he fail to follow up with therapy as directed, but he has demonstrated questionable effort towards improvement. Notably, in a consultative report dated July 1, 2010, Dr.

Jennifer L. Adams, Ph.D., did not consider the claimant and his grandmother reliable informants and noted the possibility of discontinued receipt of Special Education Services due "failure to sign appropriate paperwork or attend meetings seems to be lead to a termination in these services." (sic) (Exhibit 3F, p.3)   Additionally, he "seems to put very little effort into doing things.   He has been inconsistent with mental health services as well." (Exhibit 3F, p. 3)

Dr. Adams also questioned test results in light of the possibility of malingering and he "often showed poor effort and a tendency to give up easily."   (Exhibit 3F, p. 5) Comparatively,   referenced   test   results obtained when the claimant was in 4th Grade showed a non-verbal quotient of 74, much higher than the attained Full IQ Score at this time of 49.   (Exhibit 3F)

Nevertheless,   Dr.   Adams   concluded   the claimant had the ability to perform the demands of simple, unskilled work to the extent   that   "David   has   the   ability   to understand,   carry   out   and   remember instructions, although one-step directions would work best for David.   He may struggle with responding to supervision due to the ODD, but he should be able to work with co-workers and handle work pressures." (Exhibit 3F, p. 5)

In a consultative report dated August 30, 2010, "He reports that the medications help him do better in school and sleep better." (Exhibit 5F, p. 3) Yet, "He did not take his medication today." (Exhibit 5F, p. 3)   At this time, the consultative examiner, Dr. John W. Davis, Ph.D., equally questioned test results and "it is felt that these results   are   an   underestimation   of   the claimant's ability for unknown reasons. Claimant did not seem to put forth his best efforts   and   there   are   strong   efforts   of

malingering seen." (Exhibit 5F, p.) However, the claimant did demonstrate the ability to make simple change, do simple arithmetic, handle Serial 3's without difficulty, count backwards from 20 to 1 without difficulty, spell "world" backwards, handle four digits forward and three digits backwards, recall three of three objects in one minute and three objects in five minutes, and describe the details of the trip to this office without difficulty. (Exhibit 5F)

Again, at the time of his most recent consultative evaluation with Dr. Kenneth R. Starkey, Psy.D., on June 2, 2011, the claimant noted he was not presently taking prescribed medication and had not taken his medication for attention deficit hyperactivity disorder since 2009, as well as he had not attended outpatient counseling for any or any other concern since 2009. (Exhibit 5F) Therefore, minimal weight is given to Dr. Starkey's assessment of marginal to poor work-related limitations given the claimant at this time had no mental health treatment, which in the past had been very beneficial.

The claimant recently resumed mental health treatment on May 10, 2012, but again failed to attend the scheduled session on May 18, 2012 and failed to respond to the therapist's letter and message on May 24, 2012. Consequently, on June 7, 2012, the claimant's chart was recommended to be closed due to "Consumer has failed to stay in contact with this facility." (Exhibit 13F, p. 1)

The severity of Dr. Starkey['s] assessed mental limitations also appears to be much too restrictive in light of claimant's demonstrated adaptive functioning. Not only does he continue to have the ability to meet his own personal needs independently, he is able to perform activities illustrative of

the ability to perform the demands of simple, unskilled work. In this regards, Dr. Adams specifically commented, "David's activities are pretty consistent with his probabl[e] IQ level. He reports that he hangs out with friends, plays video games, and tends to his room clean." (sic) (Exhibit 3F, p. 4) The claimant equally testified he plays basketball and football and video games on play station and is able to understand the steps to play these games. He watches his football team (Vikings) and basketball games on television and understands how points are scored, but not penalties. He can read a grocery list and write. He acknowledged plans to enroll in classes to get his GED as well.

**Thus, based on the conflicting and questionable testing results and his adaptive functioning, the undersigned finds the claimant's intellectual functioning is best reflected by a diagnosis of borderline intellectual functioning, as opposed to mild mental retardation.**

As for the opinion evidence, there are no medical source statements specifically delineating the claimant as disabled.

Moreover, the undersigned has considered and gives significant deference to the psychological assessments of the State agency medical consultants [Dr. Joanna Koulianos, Ph.D.] at Exhibits 9F, 10F and 11F. In general, these assessments determined the claimant had severe mental impairments causing mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Otherwise, the claimant should be able to remember, understand and carry out short, simple, one and two step instructions; attend and concentrate for reasonable

increments of time; engage in limited and casual contact with the general public; respond to criticism from supervisors that are presented objectively, with support and in a simple manner; respond to limited and gradually introduced changes in routine work duties; and he should not be expected to make long term goals or plans independently.

It is also noted that the claimant had received benefits in the past as a child from August 2000 to October 2010. However, the level of severity to warrant disability as an adult is not evidence in this record. The evidence does not show the claimant is unable to work.

In sum, the above residual functional capacity assessment is supported by [the] record as a whole with significant weight accorded the psychological assessments of the State agency medical consultants.

(Id. at 25-28) (emphasis added). The Court now considers the foregoing in light of the record in this case and the issue on appeal.

1.   **Issues**

> **A. Whether the ALJ erred in failing to find that Plaintiff met Listing 12.05C?**

In this case, Plaintiff claims that the ALJ erred in failing to discuss Listing 12.05C and in failing to find that he meets the criteria for mild mental retardation. Plaintiff argues that he has satisfied the criteria of Listing 12.05C because he has a valid Full Scale IQ score of 66 and other mental impairments that impose additional and significant work-related limitations of function, *i.e.*, adjustment disorder with

17

mixed emotion, oppositional defiance disorder, disruptive behavior disorder, and personality disorder. (Doc. 15 at 3-4).

The Commissioner counters that, "[b]y declining to find mild mental retardation a severe impairment and choosing instead to adopt the diagnosis of borderline intellectual functioning found elsewhere in the record, the ALJ signaled his rejection of Plaintiff's IQ scores." (Doc. 16 at 4). The Commissioner also asserts that although "the ALJ did not explicitly discuss the criteria of 12.05C", any error is harmless because it is Plaintiff's burden to produce evidence showing that he meets a Listing, and the ALJ's decision is supported by substantial evidence. (Id. at 4-6). Having reviewed the record at length, the Court finds that this case must be reversed and remanded due to the ALJ's failure to consider Listing 12.05(C) and apply the correct legal framework.

As stated above, the Social Security regulations set forth a five-step sequential evaluation process to determine whether a claimant is disabled. At step three, the claimant has the burden of proving that an impairment meets or equals a listed impairment. See Harris v. Commissioner of Soc. Sec., 330 Fed. Appx. 813, 815 (11th Cir. 2009) (unpublished)[8] (citing Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991)). Section 12.00

---

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2.

contains the Listings for mental disorders, which are arranged in nine diagnostic categories: "[o]rganic mental disorders (12.02); schizophrenic, paranoid and other psychotic disorders (12.03); affective disorders (12.04); intellectual disability (12.05); anxiety-related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).  In his decision, the ALJ states that "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04 and 12.06".  (Tr. 23).  The ALJ then goes on to discuss the "paragraph B" and "paragraph C" criteria, in relation to the three above-referenced listings; however, the ALJ's decision does not reference, let alone discuss, Listing 12.05C, which is the listing at issue in this case.

To establish disability under section 12.05C, a claimant must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05C.  In addition, the claimant must satisfy the 'diagnostic description' of mental retardation in Listing 12.05 (the listing

category for mental retardation/intellectual disability),[9] which provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05.

The law in this Circuit provides that a valid IQ score of 60-70 after age 22 creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two. See Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (llth Cir. 2001). Thus, "a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than a 'minimal effect' on the claimant's ability to

---

[9] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

perform basic work activities." <u>Smith v. Commissioner of Soc.
Sec</u>., 535 Fed. Appx. 894, 897 (llth Cir. 2013)(quoting <u>Lowery v.
Sullivan</u>, 979 F. 2d 835, 837 (11th Cir. 1992)).

The presumption under 12.05C can be rebutted, however, when
the IQ score is inconsistent with record evidence of a
claimant's daily activities and behavior. <u>See</u> <u>Popp v. Heckler</u>,
779 F.2d 1497, 1499-1500 (llth Cir. 1986). Accordingly, the ALJ
is tasked with determining whether there is sufficient evidence
(relating to plaintiff's daily life) to rebut the presumption.
<u>See</u> <u>Grant v. Astrue</u>, 255 Fed. Appx. 374, 375 (llth Cir. 2007);
<u>Hartman v. Colvin</u>, 2014 U.S. Dist. LEXIS 91467, *7, 2014 U.S.
Dist. LEXIS 91467, *3 (S.D. Ala. July 7, 2014).

The record reflects that since age eighteen, Plaintiff has
been administered IQ tests on three (3) separate occasions. In
July 2010, Plaintiff was administered the WAIS-IV by Dr.
Jennifer Adams, Ph.D. (Tr. 240-243). Plaintiff received a full
scale score of 59. Dr. Adams noted that testing results from
the Test of Malingering was indicative of malingering and opined
that Plaintiff's actual IQ is most likely in the borderline
range. She also opined that Plaintiff could understand and
carry out one step directions, that he may struggle responding
to supervision appropriately, that he could work with co-workers
and handle work pressure, and that he may need assistance
managing any financial benefits that he received. (<u>Id</u>. at 243).

Plaintiff was next administered the WAIS-IV by Dr. John Davis in August 2010.  (Id. at 260-264).  Plaintiff received a full scale IQ score of 57.  Dr. Davis opined that the score was invalid, that Plaintiff had not put forth his best effort, that there were strong signs of malingering, and that Plaintiff could not manage any benefits that were forthcoming.  (Id.)  Nearly a year later, Plaintiff was administered the WAIS-IV by Dr. Kenneth Starkey, Psy.D., in June 2011.  (Id. at 298).  Plaintiff received a full scale IQ score of 66, placing him "in the Extremely Low (Mild Mental Retardation) range of functioning."[10] (Id. at 298-99).  Dr. Starkey opined that the IQ scores appeared to be "an accurate estimate of [Plaintiff's] current intellectual abilities", that "[f]uture testing could be expected to yield a [f]ull [s]cale I.Q. score falling within in a range of 63 to 70. . .," and that Plaintiff "was adequately motivated for the evaluation."  (Id. at 299-300).  He also opined that Plaintiff's ability to understand, remember and carry out simple instructions appeared "marginal," while his ability to work independently, with others, and with work pressures appeared "marginal" to "poor."  (Id.)

A careful review of the ALJ's decision reflects that in

---

[10] Plaintiff also received a Verbal Comprehension score of 72, Perceptual Reasoning score of 71, Working Memory score of 71, and Processing Speed score of 71.  (Tr. 299).

discussing whether Plaintiff's impairments would be expected to reasonably cause the alleged symptoms, the ALJ rejected Dr. Starkey's diagnosis of mild mental retardation. (Id. at 27) However, the ALJ did not invalidate Plaintiff's most recent 2011 full IQ score of 66. Instead, the ALJ simply concluded, without considering 12.05C, that Plaintiff's adaptive functioning skills were not indicative of mental retardation. Specifically, the ALJ stated that "based on the conflicting and questionable testing results and [Plaintiff's] adaptive functioning, the undersigned finds that the claimant's intellectual functioning is best reflected by a diagnosis of borderline intellectual functioning, as opposed to mild mental retardation." (Id. at 27). Given Plaintiff's full IQ score of 66, and the ALJ's finding that Plaintiff has several severe mental impairments including adjustment disorder, attention deficit hyperactivity disorder and personality disorder, the ALJ was required to consider 12.05C in analyzing Plaintiff's claim. Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, 2014 WL 3058550, *5 (S.D. Ala. July 7, 2014)("The ALJ's failure to acknowledge the applicability of Listing 12.05(C) and afford the Plaintiff the rebuttable presumption of deficits in adaptive functioning was clear error because the Plaintiff met both of the requirements in paragraph C."); Hogue v. Colvin, 2014 U.S. Dist. LEXIS 59667, 2014 WL 1744759, *5 (S.D. Ala. Apr. 30, 2014) (finding that the

ALJ's failure to address 12.05(C) and apply the rebuttable presumption constituted error requiring remand where the Plaintiff had a valid score between 60 and 70, and the ALJ found that the Plaintiff had other severe impairments).

The undersigned recognizes that in addressing the "adaptive functioning" aspect of Listing 12.05C, the Eleventh Circuit has sustained the rejection of claims under this Listing where the claimant's IQ score was *significantly* inconsistent with his/her adaptive functioning. For instance, in Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870 (11th Cir. 2014), the Eleventh Circuit upheld the ALJ's finding that Listing 12.05C was not met where the plaintiff performed skilled jobs, including as a skilled cook, managed other workers and made contradictory claims regarding his education and employment history. Also, in Hickel v. Commissioner, 539 Fed. Appx. 980 (11th Cir. 2013), the Eleventh Circuit held that the ALJ did not err where he acknowledged that the claimant had a valid IQ score between 60 and 70, applied the presumption established by Hodges, and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning." Id. at 984. In reaching its decision, the court noted that although the claimant had been enrolled in special education classes, she worked part-time in a nursery, was a high school graduate; prepared simple meals, dressed

24

herself, drove herself to work, attended church regularly, and socialized with friends.  Id. at 984-985.  See also Popp, 779 F.2d at 1499 (affirming finding that Listing 12.05C was not met where the plaintiff had worked skilled jobs, obtained a college degree, and had exaggerated his deficits when examined); White v. Colvin, 2015 U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9, 2015) (The ALJ properly found that the plaintiff did not have significant limitations in adaptive functions where the record reflected that although the plaintiff had been in special classes, he lived alone, maintained his financial affairs, and consistently worked at several different jobs); Robinson v. Colvin, 2015 U.S. Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015) (where the plaintiff lived independently without a highly supportive living arrangement, cared for her personal needs, and had a significant work history, the ALJ properly found that her IQ score was inconsistent with the record evidence regarding her daily activities); Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, 2014 WL 413492, *4 (S.D. Ala. Feb. 3, 2014) (although the ALJ never stated that the claimant failed to meet Listing 12.05C, the ALJ's finding that the claimant had high adaptive skills, in that he had the capacity to take care of his own needs, perform activities of daily living, and had successfully performed four different jobs since leaving high school, was sufficient to

support his decision that the claimant was not mentally retarded); Lyons v. Astrue, 2009 U.S. Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009 WL 1657388, *11 (M.D. Fla. June 10, 2009) (The ALJ's finding that the claimant did not meet Listing 12.05C was supported by substantial evidence that demonstrated that the claimant had a high school diploma, was not in special education classes, completed his own social security forms, and had earnings from 1983–1990 between $13,696 and $18,408 per year).

In this case, the evidence reflects that Plaintiff resides with his uncle, plays sports and video games, works out at the gym, cares for his personal needs, prepares light meals and can assist with some household chores. The evidence also reflects that Plaintiff was enrolled in special education classes, that he repeated the first and ninth grades, that he had all "E's" on his last report card, and that he left school after the eleventh grade. Additionally, Plaintiff does not have a driver's license, has never taken public transportation, and has never held a job. Plaintiff has difficulty reading and is able to make small change; but, the consultative doctors opined that he is not capable of managing his finances. After a thorough review of the record, examination of the analysis employed in similar cases, and consideration of the various factors underlying the ALJ's decision in this case, the undersigned

finds that it is far from clear that the presumption of deficits in adaptive functioning, to which Plaintiff is entitled, has been rebutted.[11]   Accordingly, the ALJ's decision is due to be reversed and remanded to the Commissioner.

###    V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be reversed and remanded due to the ALJ's failure to consider Listing 12.05C and apply the correct legal framework.

**DONE** this **16th** day of **June, 2015.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] The undersigned also rejects the Government's assertion that any error was harmless.  As noted above, it is not clear from the evidence before the Court that the presumption afforded by Listing 12.05C has been rebutted.  Moreover, it is unrefuted that Plaintiff meets the second prong of Listing 12.05C given that the ALJ determined that Plaintiff has several severe mental impairments such as adjustment disorder, oppositional defiant disorder, attention deficit hyperactivity disorder and personality disorder.  (Tr. 22).